UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FANIEL KESETE,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

Case No. C26-3719-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas petition, asserting his September 20, 2026, redetention without first receiving notice or an opportunity to be heard, violated his due process rights under the Fifth Amendment. *See* Dkt. 1. He seeks release from custody and permanent injunctive relief related to any future redetention. *Id.* at 11. Respondents filed a return to the petition, Dkt. 5, together with supporting declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Kurtis Reed, Dkt. 7 ("Reed Decl."), and their counsel Shaun Pehl, Dkt. 6 ("Pehl Decl."). Petitioner filed a traverse in reply. Dkt. 8.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition, Dkt. 1, for the reasons set forth herein.

## I. BACKGROUND

Petitioner is a native and citizen of Eritrea who entered the United States on or around January 28, 2023, without inspection. Reed Decl., ¶ 4. He was encountered by Border Patrol near the San Ysidro Port of Entry, detained, and transferred to the Imperial Beach Station for further processing. *Id.* ¶ 5. He was initially processed for expedited removal under the Immigration and Nationality Act ("INA") Section 235. *Id.* Petitioner claimed a fear of returning to Eritrea, which led to his referral to U.S. Citizenship and Immigration Services ("USCIS") for a credible fear interview. *Id.* ¶ 7. Petitioner was found to have a credible fear of returning to Eritrea. *Id.* ¶ 8.

Petitioner was subsequently placed into full removal proceedings and issued a Notice to Appear ("NTA"), charging him with being removable under the INA and directing him to appear for an immigration hearing. *Id.*; *see* Pehl Decl., ¶ 2, Ex. D at 2-4. He was thereafter paroled into the United States on March 9, 2023, and required to enroll in an Alternative to Detention ("ATD") program. Reed Decl., ¶ 10. The record does not contain any documents related to Petitioner's parole or his ATD enrollment.

On May 9, 2023, Petitioner filed an application for relief from removal. *Id.* ¶ 14. Officer Reed asserts that, on the same day, Petitioner also "filed written pleadings admitting to the charges on the NTA." *Id.*

On June 22, 2023, ICE's Office of Enforcement and Removal Operations ("ERO") "placed Petitioner on an order of recognizance ('OREC')." *Id.* ¶ 11. The record does not contain any documents related to Petitioner's OREC.

On August 20, 2026, Petitioner was arrested by the SeaTac Police Department for Assault in the Fourth Degree – Domestic Violence. *Id.* ¶ 15. That charge appears to remain pending.

On September 20, 2026, ICE learned of Petitioner's arrest "during routine system queries" and Officer Reed asserts Petitioner's criminal arrest violated the terms of his OREC and ATD program. *Id.* ¶ 16. The same day, ERO arrested Petitioner "during a targeted operation." *Id.* ¶ 17. ERO revoked Petitioner's OREC and ATD enrollment and transferred him to the NWIPC. *Id.* ¶¶ 16, 18.

Petitioner asserts he was not provided notice of the basis for his redetention or an opportunity to contest the basis prior to his arrest. Dkt. 1 at 9.

Petitioner was scheduled to attend an immigration hearing on October 21, 2026. Reed Decl., ¶ 20. The results of that hearing are unknown.

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim challenges his September 20, 2026, redetention as violative of his due process rights when assessed under the framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Dkt. 1 at 6-8. Respondents acknowledge that courts in this District frequently

find due process violations under *Mathews* when noncitizens are redetained without notice or an opportunity, but “respectfully disagree” with those decisions. Dkt. 5 at 4 (citations omitted). Respondents further assert that, even if the Court were to find Petitioner was entitled to notice or an opportunity before being redetained, release from custody would be inappropriate because his “criminal arrest constitutes a material change in circumstances since his initial release and demonstrates that he has not been fully compliant with the terms of his OREC.” *Id.*

Due process rights extend “to all ‘persons’ within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.” *Zadvydas*, 533 U.S. at 693. “Procedural due process imposes constraints on governmental decisions which deprive individuals of ‘liberty’ . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment.” *Mathews*, 424 U.S. at 332. Due process generally “requires some kind of a hearing *before* the State deprives a person of liberty or property.” *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen’s redetention. *See, e.g., E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). Petitioner applies the framework to the circumstances of his detention and argues he was entitled to pre-deprivation process. Dkt. 1 at 6-8. Respondents, on the other hand, do not, and “recognize that if this Court were to apply the same reasoning as

stated in *Caiza Aucatoma [v. Hernandez*, 2026 WL 1265541 (W.D. Wash. May 8, 2026)] as well as the other listed [Western District] cases, this Court will likely find the re-detention of Petitioner required notice and a pre-deprivation hearing to comport with procedural due process." Dkt. 5 at 4. For the following reasons, Respondents are correct.

First, Petitioner had a liberty interest in his continued freedom. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. When Petitioner was released shortly after entering the United States, he acquired a liberty interest protected by the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). This factor favors Petitioner.

As for the second factor, there was a high risk of erroneous deprivation and value in additional safeguards. It is undisputed that Petitioner was detained without process. *See generally* Dkt. 5. When Petitioner was released into the United States, the Government necessarily first determined that he posed neither a danger to the community, nor a flight risk. *See* 8 C.F.R. § 236.1(c)(8). To then unilaterally revoke that release, without providing any individualized, pre-deprivation process to determine whether Petitioner now poses a risk, came with a high risk of error. *See Alfaro Siguenza v. Hernandez*, 2026 WL 2587980, at *4 (W.D. Wash. Aug. 27, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1323).

Respondents contend that Petitioner's arrest was a "material change in circumstances" from those in effect at the time of his release and violated the terms of his OREC and ATD

program. Dkt. 5 at 4. While this may be true, neither the terms of Petitioner's OREC, nor his ATD enrollment are before the Court. And Respondents do not otherwise explain why an arrest—where Petitioner remains innocent until proven otherwise—constituted a violation that necessitated forgoing any pre-deprivation process. The Court does not minimize the potential seriousness of Petitioner's criminal charge, but finds it notable that the local government responsible for prosecuting Petitioner's criminal charge did not deem it necessary to hold him in custody. Moreover, neither contemporaneous DHS administrative records, nor Respondents' return memorandum suggest Petitioner poses a danger or flight risk—the mitigation of which are the two regulatory goals served by civil immigration detention. *See Zadvydas*, 533 U.S. at 690. Instead, Petitioner appears to have been taken into custody and detained simply because his criminal arrest violated his conditions of release—not because the underlying conduct evidenced a risk of flight or danger that necessitated his immediate detention. *See* Pehl Decl., ¶ 2, Ex. A at 3 (acknowledging Petitioner's arrest and indicating "system queries confirmed that [Petitioner had] violated his conditions of release"). Providing pre-deprivation process would have provided an opportunity for Petitioner to challenge the factual bases for his redetention and clarified whether Petitioner's individual circumstances warranted detention. This factor favors Petitioner.

As for the final factor, the governmental interest, Respondents do not identify one, *see generally* Dkt. 5, and the Court will not identify one for them.

In sum, the unrebutted *Mathews* analysis favors Petitioner and warrants habeas relief. Although Respondents do not substantively respond to Petitioner's *Mathews* analysis, they nonetheless argue release would be inappropriate because courts in this District have ordered bond hearings in cases involving noncitizens who were criminally arrested while on

immigration-related conditions of release. *See* Dkt. 5 at 5 (and the Western District of Washington cases cited therein). Respondents do not discuss the facts of the cited authority or suggest they are analogous to Petitioner's individual circumstances. *See id.*

The Court recognizes that fact-specific inquiries may lead courts to conclude that a post-deprivation hearing is adequate under due process. Here, however, Respondents have provided few relevant facts, and even less argument, to support their request. Although Respondents contend Petitioner's arrest violated the terms of his OREC and ATD program, they did not provide those documents or any other evidence supporting that claim. And while it can be inferred that Petitioner's arrest may now evidence or implicate community safety concerns that did not exist earlier—and thereby justify a bond hearing over outright release—Respondents do not make that argument in the return or point to evidence showing such concerns motivated ICE on the day Petitioner was arrested. In fact, there is no evidence ICE sought to learn the details of Petitioner's criminal arrest, either before or after his detention, to determine whether his detention was necessary to mitigate risk of flight or danger. Instead, it appears it was the fact of the criminal charge itself that served as the basis for both Petitioner's arrest and the decision that he would remain detained throughout the pendency of his removal proceedings.

Accordingly, the Court does not find that a bond hearing would serve as an adequate remedy under due process. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324 (acknowledging a "post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

In addition to his release, Petitioner asks the Court to permanently enjoin Respondents from redetaining him absent prior written notice and a hearing at which Respondents must prove by clear and convincing evidence that he is a flight risk or a danger to the community, and that

no alternatives to detention would mitigate those risks. Dkt. 1 at 11. However, Petitioner does not engage with the elements required for such permanent injunctive relief or provide legal authority to support his request. *See generally* Dkt. 1. His request is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition in part, Dkt. 1, and ORDERS that Petitioner be RELEASED from immigration detention within **twenty-four (24) hours** under the conditions of the OREC and ATD program in effect at the time of his redetention. Respondents shall file a status report with the Court within **forty-eight (48) hours** that Petitioner has been released. Petitioner's request for permanent injunctive relief is DENIED. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

Dated this 30th day of October, 2026.

S. KATE VAUGHAN
United States Magistrate Judge